## CONTINUATION OF SEARCH WARRANT

I, Alex Travers, being duly sworn, do hereby state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this continuation in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of the person of Eugene Walter-George Rantanen (hereafter "Rantanen"). The purpose of the search is the location and seizure of bodily substances, more fully described in Attachment A and Attachment B, that constitute evidence of the commission of the crimes under investigation.

2. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since 2022. I am currently assigned to the Detroit Division, Marquette Resident Agency (Michigan). Prior to my employment with the FBI, I was a police officer for over eight (8) years in Cranston, Rhode Island where I served as a patrol officer, in temporary assignments with the department's Special Investigations Unit, and as a patrol sergeant.

3. My duties include the investigations of various violations of federal criminal law, including matters involving violations of:

    a. 18 U.S.C. §§ 1111, 1151, 1153—murder;

    b. 18 U.S.C. §§ 1112, 1151, 1153—manslaughter;

    c. 18 U.S.C. §§ 113(a)(6), 1151, 1153—assault resulting in serious bodily injury; and

    d. 18 U.S.C. §§ 1151, 1153, Mich. Comp. Law § 750.136b(3)(b), child abuse

– second degree.

4.  The facts in this continuation come from my personal observations, my training and experience, and information obtained from other agents, other law enforcement officers, and witnesses. This continuation is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.  I submit that this continuation shows there is probable cause to believe that Rantanen committed the crimes of:

    a.  18 U.S.C. §§ 1111, 1151, 1153—murder;

    b.  18 U.S.C. §§ 1112, 1151, 1153—manslaughter;

    c.  18 U.S.C. §§ 113(a)(6), 1151, 1153—assault resulting in serious bodily injury; and

    d.  18 U.S.C. §§ 1151, 1153, Mich. Comp. Law § 750.136b(3)(b), child abuse – second degree.

Further, I submit that there is probable cause to believe the evidence to be searched for and seized, as described in attachments A and B, is evidence of the crimes under investigation.

## PROBABLE CAUSE

6.  I am informed by the Unites States Attorney's Office that murder under 18 U.S.C. § 1111 includes felony murder, which requires the following elements:

    a.  The suspect caused the death of the victim;

    b.  The death resulted from the knowing or intentional perpetration of child

abuse; and

    c. The suspect is an Indian; and

    d. The offense occurred in Indian Country.

7. I am informed by the Unites States Attorney's Office that murder under 18 U.S.C. § 1111 also includes second-degree murder, which requires the following elements:

    a. The suspect caused the death of the victim;

    b. The defendant acted with malice aforethought[1]; and

    c. The suspect is an Indian; and

    d. The offense occurred in Indian Country.

8. I am informed that to establish the offense of manslaughter, the following elements are required:

    a. The suspect caused the death of the victim;

    b. The killing was without malice;

    c. The suspect is an Indian; and

    d. The offense occurred in Indian Country.

9. I am informed by the United States Attorney's Office that to establish the charge of assault resulting in serious bodily injury for a crime committed by an Indian within Indian Country, the following elements must be met:

---

[1] The government can prove malice aforethought several ways including by showing that defendant acted with recklessness that "demonstrated an *extreme* disregard for human life." *United States v. Sheffey*, 57 F.3d 1419, 1430 (6th Cir. 1995).

   a. The suspect assaulted the victim;

   b. The assault resulted in serious bodily injury;

   c. The suspect is an Indian; and

   d. The offense occurred in Indian Country.

10. I am informed by the United States Attorney's Office that to establish the charge of child abuse – second degree by an Indian within Indian Country, the following elements must be met:

   a. First, that suspect is the parent or guardian of the child.

   b. Second, that suspect had care or custody of or authority over the child when the abuse allegedly happened, regardless of the length of time the child was cared for by, in the custody of, or subject to the authority of that person.

   c. Third, that the suspect's reckless act caused serious physical harm or serious mental harm to a child.

      i. "Serious physical harm" means any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut.

      ii. "Serious mental harm" means an injury to a child's mental condition that results in visible signs of an impairment in the child's judgment, behavior, ability to recognize reality, or ability

        to cope with the ordinary demands of life.

   d. The child was at the time under the age of 18.

   e. The suspect is an Indian.

   f. The offense occurred in Indian Country.

11. The residence, 16385 Skanee Road, L'Anse, Michigan 49946, where the incident occurred, is located within the exterior boundaries of the L'Anse Reservation of the Keweenaw Bay Indian Community, a federally recognized tribe, which the United States Attorney's Office informs me makes it Indian Country as defined by federal law. The residence is located within the Northern Division of the Western District of Michigan. Rantanen is an enrolled member of the Keweenaw Bay Indian Community and is an Indian for purposes of federal law.

12. On February 19, 2024, at approximately 7:01 p.m., police responded to a 9-1-1 call at 16385 Skanee Road, L'Anse, Michigan 49946. The caller, Rantanen, reported that Victim, who was approximately a year and a half old, was not responsive. Police and emergency medical services responded to the residence. Rantanen and Victim were the only occupants of the residence when first responders arrived.

13. In the 9-1-1 call made by Rantanen, he reported he found Victim not breathing. Rantanen told the dispatcher that Victim was slumped over the bed and not breathing. Rantanen left Victim on the bed for a nap. Rantanen told the dispatcher that he observed cuts on Victim's tongue. Rantanen updated the dispatcher that Victim started breathing, but Victim's breathing was irregular.

14. Medical services transported Victim to Baraga County Memorial Hospital, then to Hospital Sisters Health System St. Vincent Hospital in Green Bay, Wisconsin. According to medical records, medical staff observed at least eight (8) bruises on Victim's back, two (2) on front of Victim's trunk, and bruising on Victim's forehead. Medical staff reported a Computed Tomography (CT) scan of Victim's head revealed an acute subdural hematoma and midline shift. Based on information from the Scottish Acquired Brain Injury Network, "Midline shift refers to a shift (displacement) of brain tissue across the centre line of the brain. It may occur following traumatic brain injury in association with raised intracranial pressure or an intracranial haematoma which can push the brain towards one side causing midline shift."

15. Rantanen told first responders that he left Victim alone in a room, and when Rantanen returned, Victim was unresponsive.

16. FBI SA Richard Grout interviewed a doctor who spoke to Rantanen and Rantanen's wife, Alicia Rantanen (hereafter "Alicia"), at BCMH. Rantanen told the doctor that Victim was fine when Victim was put down for a nap. Rantanen came back five minutes later and observed Victim sitting up, slumped over, and limp. Rantanen picked up Victim, noticed Victim was not breathing at all, and called 9-1-1. Victim started breathing during the 9-1-1 call. Prior to Rantanen finding Victim like this, Victim was acting and eating normally and otherwise doing well. According to Rantanen, Victim was sick with a respiratory illness and was scheduled for follow-up in the near future. Rantanen did not mention anyone else being present with him

and Victim during the incident. Alicia told the doctor that she last saw Victim around 4:00 p.m. that day when she came home between work shifts. She said "hi" to Rantanen and Victim, then went to work. At the time, Victim was eating and doing well. Alicia did not mention anyone else being in the home. The doctor stated that Rantanen and Alicia were together when they spoke to the doctor.

17. Rantanen reported to medical staff at St. Vincent's that he was with Victim most of the day, but not between noon and 4 p.m., when he went to pick up his wife. Rantanen reported that Victim was in the care of several of Victim's older stepsiblings. Rantanen reported that at approximately 5 p.m., Rantanen put Victim down for a nap and Rantanen later went into the room and noted that Victim was slumped over, limp, and not breathing. No known trauma was reported except for the bruise and swelling of Victim's forehead noted the week prior to presentation.

18. Victim was transported to Milwaukee Campus – Children's Wisconsin, in Milwaukee, Wisconsin. Medical staff observed bruising to Victim's head, torso, scrotum, and buttocks. Medical staff reported that Victim's injuries were consistent with trauma, Victim was showing little signs of life, and signs of Abusive Head Trauma (AHT). Based on a meeting between with medical staff at Children's Wisconsin, the child was not likely to recover, and was likely to die unless kept on life support. I spoke with a doctor providing care to Victim, who said that the observed injuries were consistent with those they would expect to see when a child without proper safety restraints is in a car accident.

19. Based on my training and experience and conversations with

investigators and medical professionals, the injuries and marks observed on Victim are consistent with non-accidental trauma caused by someone other than the Victim.

20. I reviewed documentation from the Keweenaw Bay Indian Community Tribal Court which found that Rantanen is the uncontested biological and legal father of Victim.

21. On February 20, 2024, the FBI, Keweenaw Bay Tribal Police, and Michigan State Police Crime Scene Response Team executed a federal search warrant at 16385 Skanee Road. (See *In re The Entire Property located at 16385 Skanee Rd, L'Anse, MI 49946*, 2:24-mj-00009-MV, filed in the Northern Division of the Western District of Michigan.)

22. Investigators seized wipes with suspected blood from the area of the bathroom and hallway:



*Figure 1*

23. Additionally, investigators seized the mattress of a pack and play as it contained suspected blood:



*Figure 2*

24. Investigators now seek this warrant to test whether the suspected blood found during the search is Rantanen's or someone else's blood.

25. On February 22, 2024, investigators had another meeting with medical staff at Children's Wisconsin and learned from medical staff, the current findings represent the highest-level concern for non-accidental trauma.

26. On February 22, 2024, the FBI arrested Rantanen at Children's Wisconsin pursuant to an arrest warrant for violations of 18 U.S.C. §§ 113(a)(6), 1151,

9

1153, assault resulting in serious bodily injury, and 18 U.S.C. §§ 1151, 1153, Mich. Comp. Law § 750.136b(3)(b), child abuse – second degree. (See *United States v. Eugene Walter-George Rantanen*, 2:24-mj-00010-MV, filed in the Northern Division of the Western District of Michigan.)

27. On February 24, 2024, I was informed that Victim was pronounced deceased. On February 27, 2024, an autopsy was performed at the Milwaukee County Medical Examiner's Office. The final autopsy report is pending.

28. I submit there is probable cause to believe the crimes under investigation were committed. Regarding all of these crimes, Rantanen is an Indian and the residence where this occurred is in Indian Country. Based on the medical evidence that this was non-accidental trauma consistent with battery, that Rantanen was alone with the minor, and that the Victim died as a result, there is probable cause to believe Rantanen is guilty of felony murder (murder during the perpetration of child abuse), second-degree murder, or voluntary manslaughter (murder without malice) as well as assault resulting in serious bodily injury. Regarding child abuse second degree, Rantanen is Victim's father and had custody of Victim; based on the nature of the wounds, I submit there is probable cause to believe that Rantanen recklessly, knowingly or intentionally[2] committed an act that caused serious physical and mental harm to Victim; and Victim was under 18.

---

[2] I am informed by the U.S. Attorney's Office that if Rantanen committed the act intentionally or knowingly, he would satisfy the recklessness state of mind.

10

## **CONCLUSION**

29.     I submit that this continuation supports probable cause for a search warrant authorizing the search of Rantanen. I believe that buccal swabs obtained from the person of Rantanen can be used for a deoxyribonucleic acid (DNA) comparison to determine if his DNA is present in any of the evidence items collected and/or submitted in this case.